# In the United States Court of Federal Claims

No. 16-44C
(Filed: March 31, 2017)
(Re-filed: April 10, 2017)[1]

* * * * * * * * * * * * * * * * * * * * * *

STARRY ASSOCIATES, INC.,

          *Plaintiff*,

v.

THE UNITED STATES,

          *Defendant*,

and

INTELLIZANT, LLC,

          *Intervenor*.

Bid Protest; Equal Access to Justice Act; Attorney Fees; Special Factors

* * * * * * * * * * * * * * * * * * * * * *

*Lars E. Anderson*, Reston, VA, with whom was *James Y. Boland*, Tysons Corner, VA, for plaintiff.

*Alexis J. Echols*, Trial Attorney, United States Department of Justice, Civil Division, Commercial Litigation Branch, Washington, DC, *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, *Douglas K. Mickle*, Assistant Director. *Christian Maimone*, Office of General Counsel, U.S. Department of Health and Humans Services, of counsel.

## OPINION AND ORDER

---

[1]This opinion was originally issued under seal in order to afford the parties an opportunity to propose redactions of protected information. The parties have agreed that no redactions are necessary.

Bruggink, *Judge*.

On July 15, 2016, we granted judgment on the administrative record in favor of plaintiff in this post-award bid protest. *Starry Assocs., Inc. v. United States*, 127 Fed. Cl. 539 (2016). Starry Associates, Inc. ("Starry") protested the Department of Health and Human Services' ("HHS") decision to cancel a solicitation after the agency lost Starry's protest at the Government Accountability Office ("GAO"). Plaintiff now moves for an award of attorney fees and other costs pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d) (2012). That motion is fully briefed. Oral argument was held on February 13, 2017. Because the government was not substantially justified in its conduct throughout the procurement process, including this lawsuit, Starry is entitled to an award of fees and costs. Further, the egregious nature of the agency's failures throughout the process and the time and resources necessary to be spent by plaintiff vindicating its rights entitle it to an upward adjustment of the statutorily-set hourly rate.

BACKGROUND[2]

The Department of Health and Human Services Program Support Center ("PSC") issued Request for Quotations No. 15-233-SOL-00023 ("RFQ" or "solicitation") on November 13, 2014. The solicitation was sought to procure a range of business operations services that would support PSC's implementation of HHS's Unified Financial Management System ("UFMS"). The RFQ sought personnel experienced with using UFMS and two other independent software systems that the agency uses in coordination with UFMS. Those are the Managing Accounting and Credit Card Systems ("MACCS"), a system for accounting purchases made by government credit card holders, and GovNet-NG, a reporting system used to distribute operational reports. *See* Administrative Record ("AR") 54-55. Both MACCS and GovNet-NG are proprietary systems developed by Starry and are licensed to HHS under separate agreements. AR 48.

Three companies submitted timely quotations. The RFQ promised award to the company who was the lowest priced, technically acceptable offeror. The lowest price bidder was Intellizant, LLC ("Intellizant"). It alone was thus evaluated for technical acceptability. The technical evaluation

---

[2] The factual background is set out in far greater detail in our earlier opinion cited above.

involved a two step process. First, the Technical Evaluation Panel ("TEP"), comprised of three individuals, separately evaluated and rated the offeror. Second, the TEP met as a group and came to a consensus rating. The consensus document was then sent to the final decision maker, the Source Selection Authority ("SSA"), for her review and independent award decision.

Two of the three TEP members rated Intellizant as acceptable, but two of them noted elements missing from Intellizant's proposal. The TEP report was forwarded to the SSA, who was also the Contracting Officer ("CO"). She agreed that Intellizant was technically acceptable and awarded the contract on December 18, 2014. The CO/SSA stated in her award decision memorandum that the concerns noted in the TEP report could "easily be addressed at the time of the award, and do not outweigh the strengths of the technical aspect of Intellizant's quote."

On December 29, 2014, Starry filed a protest at the Government Accountability Office ("GAO"), alleging that HHS's evaluation of Intellizant, was unreasonable because of Intellizant's alleged inability to meet all of the statement of work elements and lack of qualified key personnel. On January 6, 2015, HHS informed GAO and Starry that it intended to take corrective action. GAO counsel inquired whether HHS intended to reevaluate proposals or issue a new solicitation. The answer was "no." The agency informed GAO that the protest had revealed gaps in the record and that it intended only to fill those gaps during corrective action. GAO accepted that explanation and dismissed Starry's first protest as academic. Plaintiff then sent a pre-filing notice to the Clerk of Court of this court, stating its intent to file a bid protest here. After advice of counsel, the CO informed offerors that the agency now intended to reevaluate proposals and make a new award if necessary. Relying on that representation, Starry withdrew its notice of intent to protest at this court.

HHS's second evaluation lasted from January 16, 2015 to April 29, 2015. Contrary to the agency's promise to perform a new evaluation, the CO instructed the TEP to provide more support for its original evaluation. Two out of the three members of TEP again rated Intellizant as acceptable, while the lone dissenter, Mr. John Thompson, repeated his concerns and found Intellizant technically unacceptable. The second final award decision changed little. The CO/SSA again rated Intellizant as technically acceptable. She thus re-awarded the contract to Intellizant. She did not pursue the two TEP member's earlier concerns regarding missing information, nor was she

3

concerned by the staffing deficiencies noted by Mr. Thompson in the second evaluation attempt.

On May 5, 2015, Starry filed a second protest at GAO, again challenging the award to Intellizant on the basis that Intellizant lacked experienced and qualified key personnel. Starry also alleged that Mr. Davis, the director of accounting services at the PSC, was biased in favor of Intellizant, having been a former Intellizant employee. Starry complained that Mr. Davis had influence over the composition of the TEP, prompting inclusion of members that were in favor of Intellizant. One of the TEP members, Karen Slater, remained on the panel even though her impartiality was questioned, having been involved in the past performance rating of an unrelated Intellizant contract. Deposition testimony revealed that her technical evaluation was based almost entirely on her previous experience with Intellizant and not on the merits of Intellizant's proposal at issue.

On July 15, 2015, GAO held a hearing and took testimony from the CO. On August 11, 2015, GAO sustained the protest in part and denied it in part. GAO found that HHS failed to evaluate Intellizant properly under the solicitation's PWS and key personnel criteria, but it decided that the allegations of bias were "without merit" based on Mr. Davis's representation to GAO that he had "recused" himself from the procurement process. AR 1130. GAO recommended a reevaluation of Intellizant's proposal in accordance with RFQ's criteria and, if the agency found Intellizant's proposal to be lacking, to terminate the award and evaluate the next-in-line offeror (Starry). AR 1130-31.

The record, however, contains no indication that anyone at HHS seriously considered following GAO's recommendation. Shortly following the GAO decision, agency counsel wrote an email to contracting personnel informing them that GAO's decision was not mandatory and that the agency could cancel the solicitation and procure the services through a new procurement or amend the current RFP. That message was circulated among relevant agency personnel, including the head of PSC, John Davis. It was left to Mr. Davis to decide what to do going forward. He emailed the head of the contracting department at PSC, Mr. Patrick Joy, on September 2, 2015, announcing his decision to cancel the solicitation. This came as no surprise to Mr. Joy, because he had been told earlier by Mr. Davis that the current RFQ solicited unneeded services. Mr. Davis' email stated that he had instructed his staff to review the UFMS support contracts, which brought to his attention an alleged overlap between the license agreements for the MACCS and GovNet

systems and the support services provided under the UFMS main contract.

A declaration submitted to GAO by Mr. Davis stated that his decision to cancel the RFQ was prompted by a request from the Contracting Officer's Representative ("COR") for the MACCS and GovNet-NG renewals, which came due in May and September 2015, respectively. This prompted him to review the support services procured under those license agreements and to conclude that they were duplicative of the main UFMS support contract. Thus the best course, per Mr. Davis, was to cancel the current solicitation and to issue a new RFQ with a more narrowly tailored PWS.

On September 8, 2015, counsel for HHS informed GAO and Starry that it intended to cancel the solicitation rather than reevaluate the proposals. This prompted Starry to file its third protest at GAO on September 15, 2015, which challenged HHS's decision to cancel the solicitation as the product of bias by Mr. Davis. GAO, however, found that Mr. Davis' explanation was reasonable and denied the protest without considering whether it was the product of bias. AR 1245.

On January 11, 2016, Starry filed suit here. Shortly thereafter, plaintiff filed a motion to supplement the record with deposition testimony. Finding credible allegations of bias and that depositions were necessary for effective judicial review, we granted that motion and allowed plaintiff to take four depositions. 125 Fed. Cl. 613 (2016). After the record was supplemented and the parties filed cross-motions for judgment on the administrative record, we granted Starry's request for permanent injunctive relief and enjoined HHS from canceling the solicitation. 127 Fed. Cl. at 551. Ultimately, it was unnecessary to reach the question of bias. It was plain from the record that the agency's entire procurement process was deeply flawed, culminating in a completely unsupported decision to cancel the solicitation. *Id*. at 548.

Starry timely filed an application for attorney fees and other eligible expenses under EAJA on October 13, 2016. Defendant opposes the motion, asserting that  the United States's position was substantially justified. Defendant also asserts that, even if plaintiff is eligible for an award under EAJA, that maximum rate that it could recover for attorney fees is limited to a cost of living-adjusted rate of just over $192 per hour.

DISCUSSION

EAJA permits a prevailing party other than the United States to recover fees so long as it meets the statutory requirements: 1) the claimant must be a prevailing party, 2) an application must be timely filed with adequate supporting documentation, 3) the claimant must satisfy the statutory size limits, 4) the fees being sought were expended in civil litigation, 5) the government's position was not substantially justified, and 6) no special circumstances make the award unjust. 28 U.S.C. § 2412(d)(1)(A), (B). The act also limits attorney fees "in excess of $125 per hour unless the court determines an increase in the cost of living or special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A)(ii). Only the government's justification and the hourly rate of Starry's claimed fees are at issue here. Plaintiff asserts that its fees should be adjusted upwards to its actual billing rate or, in the alternative, at least adjusted to account for the higher cost of living in the metro Washington, DC, area.

I. Substantial Justification

We begin with the issue of whether defendant was substantially justified. The government bears the burden of proving that its conduct was substantially justified. *Doty v. United States*, 71 F.3d 384, 385 (Fed. Cir. 1995). The standard is one of reasonableness. That is to say that the government must have had a "reasonable basis both in law and fact" for its position, such that a reasonable person would be satisfied. *Renee v. Duncan*, 686 F.3d 1002, 1017 (9th Cir. 2012). The "position of the United States" means, in addition to the position taken in the civil action, the action or failure to act by the agency upon which the civil action is based. 28 U.S.C. § 2412(d)(2)(A). The Supreme Court has stated that, when a case involves multiple stages, the court should look "at the entirety of the government's conduct." *Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 159 (1990). The court will assess the government's action as a whole, encompassing both the agency's pre-litigation conduct and the government's subsequent litigation position. *Id*.

Defendant contends that the Department of Justice was substantially justified because it reasonably relied on the agency's representations that there were redundancies inherent in the solicitation and the existing software license agreements. Defendant also argues that it acted reasonably in reliance on the GAO decision to deny plaintiff's third protest. Defendant makes much of our holding that we did not need to reach the question of bias, arguing that this allegation was the real thrust of plaintiff's protest.

We find defendant's reliance on HHS's earlier representations that there were redundancies between the solicitation and the license agreements to be unreasonable. As we explained in our opinion on the merits, there is no evidence in the record that the agency undertook any serious review of the services provided under those three contract vehicles. Mr. Davis testified that he did not read the license agreements nor perform any real comparison of the agreements to the UFMS support contract. *See Starry*, 127 Fed. Cl. at 550. There is no basis in fact to support such a position. Defense counsel was not simply at the mercy of the agency with regard to its understanding of the evidence. It had the Administrative Record as initially composed and also the benefit of the deposition transcripts after the record was supplemented. At no point, but especially not after the depositions, did the record support the agency's representation that it had evaluated the three contracts for redundancies. The government's position was not substantially justified at any point during this procurement process, including its defense in court.

Likewise, defendant's reliance on GAO's decision in the third protest is unavailing. Although GAO accepted the agency's explanation of the cancellation, it did not examine the underlying evidence. It equated the plausibility of Mr. Davis' explanation with its accuracy, assuming his statements had an underlying basis in fact. As we explained in our earlier opinion, however, that explanation was illusory and completely contrived. The decision to cancel was therefore arbitrary and capricious. The record as further developed in this protest ought to have thoroughly disabused defense counsel of any notion of rationality.

Lastly, although defendant is correct that we did not reach the issue of bias on the merits of plaintiff's protest, that provides no justification for either the agency's conduct or the government's defense in court. Plaintiff challenged not only the fundamental fairness of the procurement (bias) but also the rationality of the evaluations and subsequent decision to cancel. Plaintiff's challenge to the first two evaluations was sustained by GAO in the second protest, and we also found that basis to be well supported by the record. As we stated, the record "contains a lengthy history of agency personnel being indifferent to the fidelity of the procurement process." 127 Fed. Cl. at 549. The problems began well before Mr. Davis' decision to withdraw the solicitation and continued until the court issued an injunction. At no point was the government's position reasonably justified based on the law or the facts. Plaintiff is therefore entitled to recover fees and costs under EAJA. We turn then to the quantum of that award.

II. Special Factor

EAJA currently provides for the recovery of attorney fees at up to $125 per hour. The act, however, provides two exceptions for exceeding the $125 hourly rate: a cost of living adjustments ("COLA") or any other "special factor" that the court finds justifies a higher amount. 28 U.S.C. § 2412(d)(2)(A)(ii). EAJA does not define what constitutes a special factor but does provide one example: "the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." *Id.* The use of the term "such as" before the example indicates that limited availability of qualified counsel is not the only "special factor" that can arise. The Supreme Court declined to delineate specifically what constitutes a special factor but did limit the applicability of a special factor adjustment to those circumstances that are not applicable to a broad spectrum of litigation. *Pierce v. Underwood*, 487 U.S. 552, 573 (1988). It is otherwise left to the courts to determine what constitutes a special factor on a case by case basis. *Cf. Chui v. United States*, 948 F.2d 711, 713 (Fed. Cir. 1991) (stating that whether to award fees under EAJA and how much are discretionary).

It is plaintiff's burden to establish its entitlement to a special factor adjustment. *Carmichael v. United States*, 70 Fed. Cl. 81, 84 (2006). Here, plaintiff asserts that "the highly unusual conduct of the agency" and "'lack of fidelity to the procurement process'" should constitute a special factor justifying a higher fee award. Pl.'s Reply at 17 (quoting *Starry*, 127 Fed. Cl. at 549). Plaintiff details, much as the court did in our opinion of July 2016, the tortured and lengthy history of Starry's attempts to hold HHS accountable to the standards and processes it was promised in the solicitation. In the alternative, plaintiff asks for a COLA.

Defendant does not contest the application of a COLA as measured by the Department of Labor's Consumer Price Index ("CPI"), which would bring the adjusted hourly rate to $192.09. But, defendant does dispute the finding of a special factor justifying any higher rate. Defendant argues that the Supreme Court in *Pierce* has narrowed the scope of potential special factors to those relating to the "distinctive knowledge or specialized skill" of plaintiff's attorneys. *Pierce*, 487 U.S. at 572. Defendant argues that the nature of the case, i.e., in this instance, the egregious agency conduct, is relevant only so far as the proceedings can be handled capably by a very limited number of attorneys.

Defendant is plainly wrong in this reading of the statute. If Congress had intended to limit full recovery by a successful litigant only to situations in which qualified attorneys are scarce, it would not have characterized that circumstance as merely an example. Further, *Pierce* lends little support to the government's argument that the nature of the case and the agency's actions cannot support a finding of a special factor for EAJA purposes. The Supreme Court narrowly interpreted the meaning of the one special factor listed as an example in the statute, the"limited availability of qualified attorneys," to refer to attorneys in very specialized areas of law and not attorneys that are highly capable in litigation generally. *Pierce*, 487 U.S. at 572. In other words, the Supreme Court determined that a special factor should not be applicable"to a broad spectrum of litigation." *Id*. at 573. The Court declined to specify what other special factors might be, but found that nothing that the district court in that case relied on in its upward adjustment of EAJA fees constituted such a special factor. *Id.*

In short, while defendant is correct that plaintiff is unable to point to any reported prior award under similar circumstances, we do not treat that as the end of the inquiry. Unless we are to turn the special factor exception into a snipe hunt, we can assume that Congress did, in fact, contemplate that, under other special circumstances, more than the statutory minimum can be awarded.

Our conclusion that the particular circumstances of this case justify an award of attorneys fees at the actual amounts billed begins with two observations. First, what the agency did here constitutes an egregious example of intransigence and deception, not just with regard to the bidder, but to the GAO and to the court. It is fortunate, but relevant, that this was anomalous conduct. Second, our bid protest jurisdiction is intended as a high level review of agency conduct under relevant federal procurement statutes and regulations, such as the Competition in Contracting Act and the Federal Acquisition Regulation, which leave a great deal to agency discretion. The bedrock of those legal criteria, however, is that procurements are to be conducted fairly and transparently. The government would find its operations considerably more difficult if vendors could not routinely assume they were being treated in a straight forward fashion. Disappointed offerors inevitably complain about what amount to good faith disagreements with agency evaluators. They should not have to worry that government employees do not take their duties seriously. Plaintiff has been forced to file three bid protests at GAO and one lawsuit at the court in a more than two-year effort to ensure that HHS kept its promises and fairly conducted this procurement.

9

Starry filed its first protest at GAO in December 2014. This quickly prompted a promise of corrective action taken to fill in gaps in the record, a half measure. After threat of suit at the Court of Federal Claims, HHS promised to conduct a more thorough correction and to reevaluate proposals. Starry withdrew its protest, taking the agency's representation at face value. This was the agency's first misrepresentation. As the depositions of agency employees made clear, HHS did not conduct a meaningful reevaluation but instead undertook an attempt to pad the record to better support award to Intellizant. Further, the record at court revealed that legal errors were made during the reevaluation concerning advice given to TEP members after inquiries to the CO. *See* 127 Fed. Cl. at 545.

This led to Starry's second protest at GAO, filed on May 5, 2015. GAO sustained this protest, deciding that HHS failed to evaluate Intellizant properly under the solicitation's requirements. This protest process was not without agency misconduct, however. It misled GAO by submitting a statement by Mr. Davis that he had "recused" himself from the procurement. Thus GAO did not find any merit to Starry's allegations of bias. As we laid out in our two prior opinions, that representation was untruthful. Mr. Davis was involved in picking the TEP members, personally selecting at least one of the members; he was consulted by one member of the TEP during the process, Ms. Karen Slater; and then later he made the decision to cancel the solicitation rather than deal with the consequences of losing the protest at GAO, providing an illusory basis for that decision.

The fact that the agency left the decision of what to do with the procurement to Mr. Davis after it has just represented to GAO that he was uninvolved is a further reflection of its lack of commitment to the integrity of the process. Other agency personnel simply accepted Mr. Davis' explanation that the solicitation should be canceled, and no one undertook any effort to find out whether the basis he offered for cancellation was accurate.

Thus, Starry was again forced to file a protest at GAO, which again prompted misrepresentations by the agency. HHS proffered to GAO the rationale given by Mr. Davis–redundancies in the services solicited–and GAO accepted that information without further investigation and denied the protest. Knowing the illegitimacy of the rationale given, plaintiff was left with no recourse but to file suit here. We need not detail again the history of the suit at this court.

The extreme measures that plaintiff was forced to pursue to vindicate its right to a rational and lawful federal procurement process, combined with the shocking disregard of the truth by the agency, justify an award at higher than the default rate.[3] Both Starry and GAO were misled on multiple occasions. Although we did not explicitly reach the question of bias, the record is replete with examples of agency misconduct.

Fortunately, our holding in this regard is not applicable across a broad spectrum of litigation, nor would it entitle every successful protestor to an EAJA special factor award. The circumstances of this case are particular and unique. The bid protest process, both at GAO and the court, is in most regards an exception to the norms of civil litigation. The scope of review is normally limited to the administrative record and discovery is not usually allowed. The standard of review is highly deferential. The result of all of which is that bid protests are narrowly tailored to achieve a relatively focused scope of inquiry and an expedited consideration by the two fora that hear them. When, as here, however, the agency's conduct necessitates that an offeror file four protests in in over two years, in two fora, winning two of them and prompting one corrective action, and when the agency's defense of its conduct is highly irregular (misrepresentations and illusory promises), the circumstances of the case are anything but ordinary. We find that a special factor justifies award at a higher rate in this case.

<u>CONCLUSION</u>

Plaintiff is entitled to an award of fees and costs under EAJA. Because of the unique circumstances of this case, plaintiff is entitled to a special factor adjustment of the fees recovered at the rates actually billed to Starry by its counsel. Accordingly, the parties are directed to consult and jointly propose an amount for judgment in a status report to be filed on or before April 7, 2017.

<u>s/ Eric G. Bruggink</u>
ERIC G. BRUGGINK
Senior Judge

---

[3] We note that nothing represented or implied by defense counsel during this suit was intended to be untruthful. We assume that, like plaintiff and GAO before them, counsel took agency representations at face value. As held above, however, that cannot excuse the fact that doing so was not reasonable.